Next case is appeal number 2006-1422, Transonic Systems v. Fresenius, USA. Ms. Braun, before we start, I would request counsel for both parties to come to the lectern briefly. I have a question with respect to jurisdiction and finality. So if you could both come forward. And my question is this. I noticed that in the answer there was a counterclaim for invalidity and unenforceability. It was an answer to that counterclaim, so the issue has been joined and I did not see any disposition of that counterclaim. Can you, either of you, inform me as to the status of that counterclaim? My understanding, Your Honor- Identify yourself, please, for the record. Mark Davis of the McDermott, Montgomery Council for Appalachia, Fresenius, USA, Your Honor. Yes. We are checking on the status right now of that counterclaim. We do not know the status. What I would suggest, Your Honor, is that we could submit a short letter to the court apprising it of the status of the counterclaim. Does your adversary have any other understanding of the current status of that counterclaim? I'm Kevin Johnson and I'm from the Quinn Emanuel firm on behalf of Transonic. And I recollect that the counterclaim was actually dropped and that it was disposed of, but I frankly don't understand it in any way. We just want to verify, Your Honor, before we make a representation again. What is it being verified? Is it something that would take five minutes or five weeks? I would imagine, Your Honor, we could get you something that's accurate. Because obviously this goes to whether we have jurisdiction or not. To answer your question, I think it will take five minutes. I think we can do it with a phone call. Since there is some uncertainty, let me request that the parties provide to the court no later than next Wednesday with a statement of jurisdiction and finality, and particularly the status of this counterclaim, so that we can determine whether or not we have jurisdiction and then go forward. And once we receive that, we'll make a determination as to how to proceed. But in the interim, since the matter has been fully briefed and you are here, you'll hear oral argument, but I have to say that I am disappointed would be kind. There is a clear statement. This happens time and time again. We've written several opinions pointing out the significance of resolving these questions of finality before the appeals get here. Nonetheless, this seems to persist under the rules. In particular, Rule 28, Federal Rules of Appellant Procedure 28A4B, requires the appellant's brief to include a jurisdictional statement, including an assertion that the appeal is from a final order of judgment that disposes of all parties' titles. And your brief, Mr. Johnson, has a statement that says this is an appeal from a final judgment. Period. It doesn't say final judgment. Judgment that is final and disposes of all parties' claims. Our local rule, to emphasize the importance of this, provides that the jurisdictional statement should include a representation that the judgment or order appealed from is final, or if not final, the basis for appealability. So in this case, it was a failure to meet both the federal rule and our local rule. And here we are in this dilemma. On the one hand, if the counterclaim has not been resolved, we are without jurisdiction. But yet, all of us have prepared. We've read the briefs. We've taken the time to prepare. And here we are. You've traveled all the way from California. And in the interest of justice, it makes sense for us to go forward. But it's a very, very uncomfortable position for the court to be in. And it's time that this kind of carelessness ended. So we will look for your statement, a letter statement, no more than five pages by next Wednesday. And then we'll go forward. But we'll hear the argument in the interim. Thank you. Thank you, Your Honor. I appreciate it. Mr. Johnson. Thank you. The transonic patterns that are at issue here relate to hemodialysis. The problem that the patent solved was detecting clogging in shunts. Clogging causes recirculation, which makes the hemodialysis less efficient and can force surgery, ultimately in a patient, in order to replace the shunt. Transonic scientists discovered a way to see how the clogged shunt is operating and whether it affected this clog by measuring the amount of blood flow through the shunt. The district court erred in two critical ways. And these errors were a matter of law by erroneously construing and applying the term measuring to the Fresenius method. Do you agree that when you say measuring the change in blood flow, that is, in other words, measuring blood change over time, that that's fair construction of a patented plan? It can be over time, yes. Are you saying that's restrictive? It is over time, yeah. I mean, if the spec requires a dilution curve, what is there that would indicate that this is not something that's happening over time? Well, I think, for example, that you could, if it were at all possible, and it's not possible here, you could, for example, put some type of probe directly into the shunt to measure it right into the shunt. And it doesn't necessarily have to be over time. I mean, what you're trying to do ultimately is determine the amount of blood that's flowing through the shunt, so- Flowing over time. Over time, yes. So I think we're saying the same thing. Let me ask another question in this regard. Am I using the 99.1 as the point of departure? Measuring, claim language includes the following in column 8, line 51 and 52. Measuring the amount of distinguishable blood characteristic in said removed portion of mixed blood. The language in said removed portion of mixed blood. Tell me, as a matter of the position that you folks have, why the Brusenius method, which if I've understood it right, maybe I don't need to correct on that, involves measuring in the dialysate. Why that can be read and understood as measuring in said removed portion of mixed blood? I think there are two issues with the question that you asked. One is, with respect to measuring in the dialysate, why is that measuring in the blood? First, the answer to that question is, measuring in the dialysate is exactly the same as measuring in the blood. Both briefs talk about the fact that there's concentration of mass here. And Dr. Guggenheimer's undisputed testimony is that when you calculate the ratio of concentration differences in the dialysate, that is exactly identical to, not close to or related to, it's identical to measuring the ratio of concentrations that appear in the blood. And in fact, the dialysate is not what flows ultimately through the shunt. It's the blood that flows through the shunt. So in order to determine the indicator, how well the indicator is moved, or the sodium is moved, or the conductivity of the blood, they have to measure what's going on in the blood. I don't have any question about that, I think. It would be a pretty poor medical device if it didn't tell you what was going on in the blood. But my question is, when the claim language says the measuring is to occur, quote, in said removed portion of mixed blood, unquote, what's your position as to the assertion that measuring in the dialysate is not measuring in the mixed blood? It is measuring in the mixed blood, because what's happening is that when the lines are reversed, and they calculate something called effective dialysis, and there is recirculation that occurs, the sensors are measuring exactly what is happening in the blood that has been removed. I mean, it follows the language directly. It's measuring the amount of distinguishable blood characteristics in said removed portion of mixed blood. Their witnesses admit it. I don't think there's any dispute that the first three elements of this claim are met by Cresenius' method. Delivering, mixing, and removing. They do all three of those. The real dispute here on this appeal is whether they measure or not. And whether the district court narrowly applied measuring to read out indirect measurements, non-absolute measurements, proportional measurements, ratios, things that can be used to measure, and that are fully supported both by the plain language of the claims and by the specifications. I think you've actually figured out something, Mr. Johnson, which may help you with the question you're trying to perhaps inarguably enhance. You say the district court gave too narrow instruction and read out indirect measurements. Right. Is the position that measuring the dialysis is an indirect measurement, but that's okay because that kind of measurement is still within the ambit of the claim? Or is your position that it's not indirect measurement, measuring the dialysis, it's still measuring directly in said removed portion of mixed blood? It's still measuring directly, telling you what's going on in the blood. It's not putting a sensor or probe in the blood. And maybe a diagram may be worth looking at. If I could turn your attention to Joint Appendix 923, it shows the sensors on the dialysis side in the proscenius membrane. They have the sensors on the dialysis side. The patent in one of its figures shows a sensor on the blood side. So what my point is that by putting the sensors on the dialysis side, it's exactly the same as putting it on the blood side. In fact, it gives you the exact same numbers. So whether you want to call it direct or indirect, here it's actually the same thing because those ratios are identical. Leaving aside the direct and indirect, because I'm not sure my view of it is what I know now, that's relevant. Going back to just the question I asked you at the get-go, which is measurements over time, it strikes me, and tell me why I'm wrong, that the accused methods aren't taken, the measurements aren't taken as a function of time. That they're something called steady-state measurements, which is what it is, so that that would preclude them from the measurement being taken over time. And it strikes me, therefore, that the difference between the accused methods and the patented methods are the patented methods, to the extent they require plotting on a dilution curve, require few changes over time. Well, first and foremost, their measurements are taken over time. I mean, their measurements are taken, first of all, they're taken in an original state where the blood lines are in what they call the normal configuration. They measure dialysis, the ratio of concentration in the dialysate. They do that with the lines in the normal configuration. Then, over time, they watch what happens, what flows through the shunt, and then reverse the lines. And then, because of recirculation, they're then able to take another measurement of what's called the effective dialysis. And this comes out of uncontroverted testimony from their own expert, Dr. Ward. They then take those two numbers, effective dialysis and dialysis, and they plug it into an equation, which is equation 11 in Dr. Ward's declaration. And that calculates the shunt blood flow. So they are, indeed, measuring it over time. Just also pulling up on your point that with respect to... No, it is the same way. It is the same way. Because there's no fundamental difference between bolus or state-to-state measurements here. I mean, they yield exactly the same results. And when they're taking measurements, they're doing it over time. And following up on, actually, what this court has decided in what we call transonic 3, or NMT3, in 2005, that specific decision actually, I think, confirms the fact that measuring can be something other than absolute, as does what this court did in 2001 with respect to changing. In both of those situations, this court... directly on the bloodline. It can be... Measuring can be done with respect to proportions. It can be done with respect to ratios. It can be done with respect to indirect measurements. You know, if I want to measure the amount of luggage on a plane, I can either measure the luggage before it goes on the plane, or I can measure the plane with the luggage on it and calculate the baggage by knowing how much the plane weighs. I mean, there are different ways to measure things. And the patent specification, we cited this in our briefs, specifically talked about these proportional measurements, these relative changes. Right, but there's nothing in transonic 3 or any other of our earlier opinions that says that you still don't need to measure over the concentration over an interval of time, right? I would point your honor to appendix page 106, which is part of the quote from NMT 3 of the 2005 decision. 106, thus so long as an equation that embodies indicated... I have my opinion. So, if you look at... This is a... it's a Westlaw page 6. I'm not sure I have the page here. Yeah. On the left column, first, second paragraph there, the last sentence. Thus so long as an equation that embodies indicator dilution principles is used to estimate shunt blood flow. Use of a different indicator, a different way of introducing the indicator to the blood, and a different chain of blood characteristics, do not mean that shunt blood flow is not determined or calculated. Right. But that doesn't address the question of measuring. That's talking about determined or calculated. And that's correct, your honor. Measuring wasn't an issue in that particular area. This is obviously the element that came right after. Let me ask you. It seems to me this is maybe a hypothetical to help clarify the discussion. If you're driving on the turnpike and you measure the time you enter the turnpike and then you travel 60 miles and you measure the time you exit the turnpike, one can calculate from the measurements of the time that you've traveled 60 miles an hour. But there's no measurement of the speed. Nobody is measuring the actual speed. You're measuring time. You know the distance, so you're calculating speed. Obviously, there's a direct correlation, and that data may be useful on the assumption you don't stop and have something to eat along the way. Nonetheless, there's a direct correlation here. Isn't that analogous to what we're talking about here where the claim calls for a measuring? In my hypothetical, that would mean something that detects speed as opposed to something that detects time. Well, here it's not quite accurate because here they use the speed. They need to know what is happening in the blood. The Fresenius does not measure speed. They measure. All they care about is the rate of flow through the shunt. The way that they calculate that is by introducing sodium on the dialysis side and watching how quickly the speed of that travels through the blood. That tells you the conductivity of the blood, and they're then able to figure out... But it's a different measurement. It's the identical measurement because... Let me ask you this, Mr. Jones. I'm sorry, but you keep saying it's the same. When you say that, are you saying that it gets you to the same end point and, therefore, it's the same? No, I'm saying it's the same because if you were to take the ratio of concentration differences on the dialysis side, that ratio is identical to the ratio of concentration differences if they're measured on the blood side. The number is identical, and Dr. Guggenheimer says that in paragraph 61 of his declaration. And it's page 1109, 1101. It's identical. I don't think anybody's disagreeing with you that what you end up measuring has something to do with the blood. I think everybody in the room understands that. At least I have a little bit of trouble because you keep saying it's the same, and then you talk about it sounds like you're saying it's the same because you end up getting the same measurement at the end. And I'm not sure I hear you addressing Judge Lynn's question, which is, sure, you end up knowing what the speed was, but you use different parameters and a different way of approaching it to get to that point. I'd be interested to hear your response to that, too, other than saying, in the end, you come to the same number. Well, the reason that it's the same, the reason that it's the speed in the hypothetical is because the ratio of concentration differences on the dialysis side, and I'm going to say it again, is the same as on the blood side. What they care about is that ratio, and the ratio then is used to then calculate the shunt blood flow. And so if I were to say that it's... Is the calculation, of course, the last step in claim one of the 989 and that's about calculating the rate of blood flow, is the calculation made from the ratio number or is the calculation made from a different number? It's... Dr. Kravitsky and Dr. Kukenheimer both point out that it's the ratio number that they use. They take the numbers and they plug them into the equation 11 that's in Dr. Ward's declaration. It is the effective dialysis. That is the part of... That is where the measuring is actually done. It's not when it's... So the ratio is the measured amount of distinguishable blood characteristics. That is... The ratio of concentration differences is the measured amount of distinguishable blood characteristics. That tracks a physical parameter in the blood. It tells you the conductivity of the blood. Yes. All right. We have chewed up the clock for you. But we'll restore your three minutes for rebuttal. And Mr. Davis, if you'd like to make things a little louder, we'll give you an extra three minutes for your argument. Thank you, Your Honor. And again, Mark Davis and McDermott for the equity percentage in USA. I'd like to start with the issue of claim construction. And I'd specifically like to start with the actual wording of the measuring limitation. Because there's been a lot of talk about getting to the same result and measuring the blood flow in the shunt. But that's the overall result of the entire claim. That's not even what is going on in the measuring limitation. So if I could direct your attention to the actual wording of Claim 1, which appears at JA 60. This is Claim 1 of the 989 patent. And for purposes of the motion, the parties have treated the measuring limitations that were at issue, which are all repeated in our brief. As having the same scope. Now, the actual wording of the measuring limitation is measuring the amount, not the ratio, not the ratio of change, measuring the amount of distinguishable blood characteristic. And as Judge Gordon pointed out, in said removed portion of mixed blood. So there are a couple of important things going on there. And I should point out that the amount is not a ratio of the concentration. And it's certainly not the ratio in change in the concentration. And even if you were to accept this true, which we do not, that you can equate under certain special circumstances, the ratio of change in concentration to the ratio on the dialysate side to the ratio of change in concentration on the blood side, that doesn't get you where you need to go in order to meet the measuring limitation. The measuring limitation is a very specific and very narrow worded limitation. And it requires that you know the amount. Knowing 3 to 1, that the ratio of change in concentration is 3 to 1, doesn't let you know what the concentration is on the blood side. We don't know. It's impossible to know. And when we brought that up at the district court level, on the summary judgment level, they conceded, rather than fight that you could actually figure out the amount of the concentration, they said, no, no, no, that's not what we're arguing. We're arguing that you know the ratio of change. But the ratio of change doesn't give you what the claim requires, which is the amount. And if I could direct your Honor's attention to page 664 of the appendix, which is the statement in their summary judgment opposition and cross motion. It's right in the middle. It starts at line 12. Fresenius and its expert, Dr. Warg, argue that no blood characteristic is measured because the relationship between concentration of sodium, which is what Fresenius adds on the dialysate side, in the dialysate in the blood is complex and unknown. And this is because we're not talking about a static, steady state. We're talking about fluid that's moving in opposite directions. So it's not like a stagnant pool that over time might have an equal amount. What they said is, they didn't fight that the relationship between the concentration of sodium and the dialysate in blood is complex and unknown. Instead they said that the argument is fallacious because the blood characteristic that is being measured is a ratio of concentration differences and not the concentrations themselves. So they're saying, no, we're not arguing about concentrations themselves. But that's what the claim requires. And what Transonic is trying to do is they're trying to go back to the old claim language that they had prior to the patent office rejecting their claims based on the Hester Priority. And that appears, Your Honor, at the end of first volume JA646. So if you look at number two, you will see that originally, prior to the rejection, I'm sorry, JA646. It's almost at the very end of volume one. So instead of having the measuring, they say monitoring said blood and said arterial line to sense the presence of said distinguishable blood characteristic to thereby determine the presence of blood having said changed parameter in arterial line. Now, the patent office rejected that. And in response, and this is on page JA647, after an interview, Transonic added the tripartite requirements of changing, measuring, and calculating. And as this court has already held in what we can refer to as NMT3, the calculating and the determining steps are all accorded equal scope. So rather than have the broad monitoring language, they went to the very specific changing and measuring and calculating. Now, the district court also properly looked at measuring claim limitation in context. It looked to what the role of that limitation was in the overall claim. And as this court has already held, the calculating and the determining limitations require the use of one of the equations that are spelled out in the specification. And so what you need, the type of measurement you need, you need to measure an amount. And you need to give a numeric value to that amount so that you can plug it into one of the equations that this court has already held is required to be used to satisfy the calculating and determining steps. This is not referring to the part of the invention that is described in the 989 patent at the top of column 6, where it refers to the, let's see, I guess starting at the bottom of column 5 talks about a sensor provided at a location downstream of the Port 40. Et cetera, et cetera. And we'll measure some quality of the blood. Right. And then there's also, it says that that measured output signal doesn't seem to be a ratio, right? That measured signal is directed to a detector. The detector records the signal and carries out calculations described above for converting the sensor output to a blood concentration signal for determination, et cetera, et cetera. So it seems to me that's describing the measurement of a single characteristic. Right. It's measuring a physical characteristic in the blood and providing it a numeric value so that they can plug it into one of the equations. And let me just, while we're talking about parameters, transonic inconsistently sometimes refers to the blood parameter as being sodium, the sodium concentration. At other times, it refers to the parameter as being the ratio of the change in concentration. Now, in their briefs, they actually admit in the beginning that the parameter is a physical parameter. It has to be something that is measurable. So, for example, for it to be a blood characteristic, for it to be actually measured in the removed blood, it has to be something physical. And if you look at the beginning of the specification at, say, column 2, it gives different examples that are all physical characteristics of the blood. You cannot measure at one given point in time a ratio of changes in concentration when those measurements of the changes in concentration necessarily have to be done at different points in time, although not as a factor of time. So, again, the changing limitation requires changing a selected blood parameter and blood flowing in the in-set circulation system to produce a distinguishable blood characteristic in blood, not about blood, which is delivered to the arteriovenous shunt. A ratio of changes in concentration cannot be a physical blood parameter. And sodium, as the physical blood parameter, we never know the amount because we figured out a different way. And we figured it out based on our dialysis invention, which goes back to 1982, long before transonic. And, indeed, transonic admits in their brief that dialysis, the measure of dialysis, is not a parameter of the blood, it's a parameter of the dialyzer. And they give no explanation in the brief. I'm sorry, which brief? They admit that in their reply brief, and that is at... Let me go back, I'll get that for you, Your Honor, I apologize. You're on page 5, so I'm coming behind you. Page 5 of their brief, Your Honor. So, again, while they say that it's identical with regard to the measuring, the unrebutted evidence, the uncontested evidence, is that no one's ever asserted, they never asserted down below. And as the district court found, there was no quantitative measurement of the concentration of sodium on the blood size that you could determine from the proscenius method. Just before we run out of time here, let me ask you about summary judgment of DOE. Isn't there a problem here with... Isn't this a factual issue that the judge is solving on summary judgment, and is there a problem with that? No, Your Honor. In other words, are there experts or some other evidence that at least the inference is going to size enough to dispute whether or not the genesis of it operates in substantially the same way, etc.? Certainly, Your Honor. Transonic never takes on the actual rationale of the district court for finding that there was no infringement under the doctrine of equivalence. As this court held in vehicular tech, if a claim limitation must play a role, and the... You know, this court held in vehicular technology said if a limitation, quote, must play a role in the context of the specific claim language, then an accused device which cannot play that role, or which plays a substantially different role, cannot infringe under the doctrine of equivalence. That was binding precedent. That rule of law is binding both on this panel and on the district court. That was the rationale that the district court had for finding, because we could not get the numeric value of the sodium concentration, which was the indicator for the blood parameter, so that you could plug it into the equations that this court has held must be used. So is this a vitiation argument? It's a... Vehicular technologies I've seen cited as setting forth an independent rule, but in effect it is a vitiation argument. It's akin to that. But, you know, it's... You look at the role that this limitation is supposed to play. It's giving a measurement of a blood parameter such that you can assign a numeric value on appeal Well, they've abandoned their old plain construction that it can just be a judgment, and they've admitted that it has to be a numeric value, although they dispute what type of numeric value. But under the plain reading of the claim, which says amount, not ratio, you need to have a method that will provide a numeric value that you can plug into an equation. That role cannot be played by the Fasemius method. Even though we pointed out in our brief that Transonic failed to address the rationale of the court in finding no infringement under the doctrine of equivalence, they still, on their reply brief, did not address it. And they didn't address it in their main argument, and I would spit to you it's a little late for them to try for the first time to address that rationale on rebuttal. But you have to acknowledge, looking at what the district court said and did, it appears at least, and this is at page 10 of her opinion, that there is the esthesize of vehicular technologies, but then there's also the question, this term seems they operate in substantially different ways, which is a test other than the all-implications with the initiation. I mean, it seems to suggest that they operate in substantially different ways is inherently a factual question, is it not? Well, the court's decision with regard to the doctrine of equivalence, and again, page 10, what the court is saying under vehicular technologies is that it's not playing that role, and therefore it's substantially different, because it cannot play that role. And because it cannot play that role, it's not in substantial change. It's not substantially the same function, way, result, because it's not playing that function at all. So in order for there to be infringement under the doctrine of equivalence, you've got to show all three. So what the court found is it's not playing that function in any way, shape, or form. And given that, there is no dispute. And there is no dispute in this regard as to the actual figures that are capable of being made. As I pointed out to you, to the district court, they conceded that you cannot derive, even indirectly, the actual amount of sodium, the concentration of sodium on the blood side from any of the measurements that Chrysanius takes on the dialysate side. So given that total absence of proof there, the court, really, it would be error for her to do anything else. Your Honor, I see that I'm out of time. Thank you very much for the extra time. Thank you, Mr. Davis. Mr. Jones? Thank you, Your Honor. Just picking up on the doctrine of equivalence, we do take on the points with respect to the doctrine of equivalence. It's on page 18 and 20 of our reply brief. And the fundamental issue we have with respect to what the district court did on doctrine of equivalence is, on page 10, lines 13 and 15 of the district court's order, the district court concluded, measuring dialysate is substantially different from measuring blood. This is particularly true because it is not possible to derive one measurement from the other. Unfortunately, that's just an incorrect statement. And Dr. Guckenheimer's undisputed testimony, appendix pages 1099 to 1101, paragraph 61, say that you can derive one measurement from the other. Can that be read? Let me ask you this. It appears from the district judge's opinion that she agreed with her opponents about the amount being a critical portion of this measuring limitation. And that the question was raised whether you could come to an understanding of what an amount of blood characteristic was using their method. So when she says you can't derive the one from the other, can that fairly be read as her restating her opponent's argument that there's no way, for example, to know the sodium concentrate, knowing the ratio, or is that an unfair reading? I think that that's an unfair reading. And I think it's unfair, first of all, because that's an incorrect statement. Dr. Guckenheimer again said, you can determine the ratio and figure out how much sodium there is by measuring it on the blood side or on the dialysate side. So as a matter of fact, when your opponent says it's impossible, using Fresenius method, to convey a specific amount, we disagree. Absolutely unequivocally disagree. And furthermore, there's been a lot of testimony with respect to amount. I'd like to point out claim one of the 419 patent does not use the word amount. It says measuring the measurable physical characteristics. It doesn't say measuring the amount of blood gram. And that is a fundamental difference. And in fact, finding no infringement under the Doctrine of Quotas or a literal infringement of claim one under 419, I think, was even more erroneous, if I could. A couple of final points. Your Honor pointed to, was looking at the specification. I'd like to point out column seven. Bottom of column six, line 66 or so, up to the top of column seven. That section discusses and then tells a person with ordinary skill in the art that ratios are contemplated. It says the indicator is a calibration injection, as described above, and relative changes of sound velocity related to known blood flow, cued dial, are measured by sensor. It talks about measuring relative changes. That is measuring ratios over time. And in fact, going back to, of course, what you asked me at the beginning, Fresenius does take two measurements over time. It's laid out in Dr. Ward's testimony in his declaration and in Dr. Guggenheim's testimony. They measure, even once the steady state is achieved, they take two measurements and they use those two measurements on both in the reverse configuration to then calculate the ratio of concentration differences. Got that? Yes. So again, the ratio of concentration difference. I'm not saying that the sodium. Sodium is an indicator. It's the ratio of the sodium, the concentration difference, that tells me what the conductivity is in the blood. Thank you. Thank you very much. Case is submitted.